**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

In re META FINANCIAL GROUP,
INC., SECURITIES LITIGATION,

No. C 10-4108-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTION TO
DISMISS THE AMENDED
COMPLAINT**

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   *A.  Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   *B.  Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*II.  LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   *A.  Elements Of The Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   *B.  Standards Applicable To The Motion To Dismiss* . . . . . . . . . . . . . . . 10
      *1.  Rule 12(b)(6) standards* . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      *2.  Rule 8(a) and 9(b) standards* . . . . . . . . . . . . . . . . . . . . . 14
      *3.  PSLRA pleading standards* . . . . . . . . . . . . . . . . . . . . . . 14
   *C.  Application Of The Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
      *1.  Pleadings based on confidential informants* . . . . . . . . . . 15
      *2.  The § 10(b)/Rule 10b-5 claim* . . . . . . . . . . . . . . . . . . . . 16
         *a.  Misstatements and falsity* . . . . . . . . . . . . . . . . . 16
         *b.  "Puffery" and "group pleading"* . . . . . . . . . . . . . 16
         *c.  Scienter* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
         *d.  Connection, reliance, economic loss, and causation* . . 18
         *e.  Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
      *3.  The § 20(a) "control person" claim* . . . . . . . . . . . . . . . . . 19

*III.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

In an Amended Class Action Complaint For Violations Of Federal Securities Laws (Amended Complaint) (docket no. 25), filed March 14, 2011,[1] the plaintiffs seek, on behalf of themselves and a putative class of purchasers of common stock of defendant Meta Financial Group, Inc., damages and injunctive relief on claims of securities fraud against Meta Financial Group, a holding company, and against certain officers of MetaBank and/or Meta Trust Company, which are companies held by Meta Financial Group. The plaintiffs allege, generally, that the defendants published a series of materially false and misleading statements about Meta Financial's operations and finances, knowing that or with reckless disregard to whether the statements were materially false and misleading at the time of such publication, and knowing that or recklessly disregarding whether the statements omitted material information necessary to make the statements, in light of such material omissions, not materially false and misleading. They also assert that the individual defendants should be liable for the fraudulent actions of Meta Financial as "control persons."

---

[1] The plaintiffs' original Complaint (docket no. 1) was filed November 5, 2010. In an Order (docket no. 16) filed immediately after a hearing on January 12, 2011, I appointed The Eden Partnership as lead plaintiff for the putative class action pursuant to 15 U.S.C. § 78u-4(a)(3)(B) and approved The Eden Partnership's selection of lead counsel pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). The Amended Complaint was filed by the lead plaintiff on March 14, 2011, pursuant to a Scheduling Order (docket no. 21). That Scheduling Order also set deadlines for the filing and briefing of the motion to dismiss now before me.

# I. INTRODUCTION

## A. *Factual Background*

"When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Thus, the significant factual background presented here is based on the plaintiffs' allegations in their Amended Complaint.

The plaintiffs allege that Meta Financial focused on two core businesses, a regional retail banking business and a national payments business, both of which were conducted through its Meta Payment Systems (MPS) division. They allege that Meta Financial's growing MPS division included a program to provide tax refund anticipation loans (RALs) in connection with a tax preparation firm, prepaid debit cards for refunds with another major tax preparation company, and the iAdvance micro lending product, which was designed to provide a line of credit on prepaid cards, including the prepaid cards issued in association with tax refund loans provided by MetaBank partners. The plaintiffs allege that MPS was a crucial aspect of Meta Financial's business, as the source of substantial revenue. However, they allege that Meta Financial's iAdvance product was targeted to people with poor or no credit, providing short-term credit to those customers who agreed to direct deposit their paychecks onto a MetaBank prepaid card. The iAdvance product generated revenues by charging $9.95 per month, $2 per ATM withdrawal, and an "advance fee" of $2.50 for each $20 increment borrowed, resulting in "fees" that translated into an annualized interest rate for repeat borrowers of as much as 650%. The plaintiffs allege that the iAdvance program also circumvented federal laws that protect a minimum income from garnishment and that forbid garnishment from social security checks, because iAdvance loan customers were required to use MetaBank prepaid cards

to which their paychecks were directly deposited, so that iAdvance was able to deduct loan payments from customers' paychecks.

The plaintiffs' allegations rely, in substantial part, on confidential informants as the sources of information concerning securities fraud arising from Meta Financial's statements about the operation of and revenue from the iAdvance product and MPS division. One such confidential witness was described in the Amended Complaint as "a former MPS employee from the Vendor Management Department who worked at the Company for approximately two years until s/he was laid off in January 2010, Meta Financial conducted a mass layoff in January 2010, terminating almost all of the personnel in the Credit Department"; a second was described as someone "who worked for MPS for about two years until s/he was laid off in January 2010"; and a third was described as "a former Mortgage Loan Officer at Meta Bank who worked at the Company until June 2010."

The plaintiffs allege that, according to the confidential informants, the Office of Thrift Supervision (OTS) was investigating Meta Financial's iAdvance program at least by 2009, because the OTS questioned the benefits and legality of the iAdvance program, but the defendants failed to disclose that OTS investigation in any published securities reports or filings. The plaintiffs allege that, while the OTS investigation was proceeding, the defendants continued to paint a rosy picture in various filings with the Securities and Exchange Commission (SEC) in 2008, 2009, and 2010, indicating, among other things, that the iAdvance product was experiencing "increasing consumer acceptance and performance"; that "MPS' programs are managed prudently, in accordance with governing rules and regulations, and without unnecessary exposure to the capital base"; that "[t]he last regular examination of the Bank was conducted in early 2009"; that MPS's net income and earnings were increasing dramatically; that the MPS unit was continuing to grow; and

4

that Meta Financial's internal controls were adequate. The plaintiffs allege that, because the defendants knew that the OTS investigation was occurring and that OTS had indicated that there were problems with the legality of the iAdvance program that would jeopardize the continuation of that program, the defendants knew of or recklessly disregarded the material falsity of their statements or knowingly or recklessly omitted material information from them.

The plaintiffs allege that it was not until October 12, 2010, that the defendants disclosed the OTS investigation in a published report with the SEC. They allege that the October 12, 2010, report revealed for the first time that the OTS had advised Meta Financial on October 6, 2010, that the OTS had determined that Meta Financial had "engaged in unfair or deceptive acts or practices" in violation of Section 5 of the Federal Trade Commission Act and the OTS Advertising Regulation in connection with the iAdvance product and that the OTS required Meta Financial to discontinue all origination activity for iAdvance lines of credit by October 13, 2010. The report also revealed that the OTS had informed the defendants that it planned to require Meta Financial to reimburse iAdvance borrowers and specifically required Meta Financial to obtain written approval of the OTS Regional Director prior to engaging in various kinds of activity. The report acknowledged that the discontinuance of the iAdvance program and the potential discontinuance of the tax-related programs would eliminate a substantial portion of MPS's gross profit, and that the discontinuance of the iAdvance program could result in elevated rates of nonpayment on outstanding iAdvance loans. The plaintiffs also allege that, on October 18, 2010, Meta Financial made a further disclosure revealing that Meta Financial had sought approval from the OTS to enter into new third-party relationship agreements, but that request had been denied.

The plaintiffs allege that, in the wake of these belated disclosures, the price for Meta Financial stock shares collapsed 60% in just five trading days, from a closing price of $33.25 per share on October 12, 2010, to a closing price of $13.29 per share on October 19, 2010, on unusually high trading volume.

## B. *Procedural Background*

In the Amended Complaint, the plaintiffs assert a claim of violation of § 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated under that Act against all defendants. Specifically, the plaintiffs allege that, during the class period (May 14, 2009, to October 18, 2010) the defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the class period, did: (a) deceive the investing public regarding Meta Financial's business, operations, management and the intrinsic value of Meta Financial common stock; (b) enable defendants to artificially inflate the price of Meta Financial shares; (c) enable defendants to arrange the sale of millions of dollars of Meta Financial shares while in possession of material adverse non-public information about the Company; and (d) cause the lead plaintiff and other members of the Class to purchase Meta Financial common stock at artificially inflated prices. The plaintiffs allege that, in furtherance of this unlawful scheme, plan, and course of conduct, the defendants, jointly and individually (and each of them) took various actions to disclose materially false information or to omit material information from disclosures.

The plaintiffs also allege a claim of violation of § 20(a) of the Securities Exchange Act, that is, a claim of "control person" liability for the wrongdoing of Meta Financial, against individual defendants. Specifically, the plaintiffs assert that, because of the individual defendants' positions with Meta Financial, the individual defendants possessed the power and authority to control the contents of Meta Financial's public disclosures, had

copies of those disclosures prior to or shortly after they were issued, and could have prevented their issuance or caused them to be corrected. The plaintiffs also allege that the individual defendants had access to material non-public information and knew that various adverse facts had not been disclosed to or were being concealed from the public, while various positive representations being made to the public were materially false and misleading.

As relief on these claims, the plaintiffs seek certification of a class under Rule 23 of the Federal Rules of Civil Procedure; an award of compensatory damages in favor of the plaintiffs and the other class members against all defendants, jointly and severally, for all damages sustained as a result of the defendants' wrongdoing; an award of reasonable costs and expenses, including attorney fees and expert fees; an award of extraordinary, equitable and/or injunctive relief; and such other and further relief as the court may deem just and proper.

Neither Meta Financial nor the individual defendants filed an answer to the Amended Complaint. Instead, as anticipated, *see* Scheduling Order (docket no. 21), on April 11, 2011, the defendants jointly filed the Motion To Dismiss The Amended Complaint (docket no. 32) that is now before me. The Lead Plaintiff, The Eden Partnership, filed its Opposition To Defendants' Motion To Dismiss The Amended Complaint (docket no. 37) on May 10, 2011, and the defendants filed a Reply Brief In Support Of Their Motion To Dismiss The Amended Complaint (docket no. 40) on April 1, 2011. I have not found it necessary to hear oral arguments on the defendants' Motion To Dismiss.

## II. LEGAL ANALYSIS

### A. Elements Of The Claims

Before considering the standards applicable to the defendants' Motion To Dismiss, I will briefly survey what it is that the plaintiffs must plead and prove to prevail on their claims. The plaintiffs assert claims pursuant to § 10(b) of the Securities Exchange Act and Rule 10b-5 implementing that section of the Act and pursuant to § 20(a) of the Act.

As the Eighth Circuit Court of Appeals recently explained,

> To prevail, a § 10(b)/Rule 10b–5 claimant ordinarily must show "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Sci.-Atl., Inc.*, 552 U.S. 148, 157, 128 S. Ct. 761, 169 L. Ed. 2d 627 (2008).

*Minneapolis Firefighters' Relief Ass'n v. MEMC Electronic Materials, Inc.*, 641 F.3d 1023, 1028 (8th Cir. 2011). The Eighth Circuit Court of Appeals has explained that scienter, one of the elements central to Meta Financial's challenge to the pleadings, "'can be established in three ways: (1) from facts demonstrating a mental state embracing an intent to deceive, manipulate, or defraud; (2) from conduct which rises to the level of severe recklessness; or (3) from allegations of motive and opportunity.'" *Detroit Gen. Retirement Sys. v. Medtronic, Inc.*, 621 F.3d 800, 808 (8th Cir. 2010 (quoting *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008)). More specifically,

> "The inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc. v. Makor Issues & Rights,*

*Ltd.,* 551 U.S. 308, 322–23, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007). "[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Id.* at 323, 127 S. Ct. 2499. The Supreme Court explained:

> The strength of an inference cannot be decided in a vacuum. The inquiry is inherently comparative: How likely is it that one conclusion, as compared to others, follows from the underlying facts? To determine whether the plaintiff has alleged facts that give rise to the requisite "strong inference" of scienter, a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable, *i.e.,* of the "smoking-gun" genre, or even the "most plausible of competing inferences." Recall in this regard that § 21D(b)'s pleading requirements are but one constraint among many the PSLRA installed to screen out frivolous suits, while allowing meritorious actions to move forward. Yet the inference of scienter must be more than merely "reasonable" or "permissible"—it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.

*Id.* at 323–24, 127 S. Ct. 2499 (internal citations and footnote omitted).

*Minneapolis Firefighters' Relief Ass'n*, 641 F.3d at 1029.

Section 20(a) of the Securities Exchange Act provides for a companion claim, establishing "liability of those who, subject to certain defenses, 'directly or indirectly'

control a primary violator of the federal securities laws." *Lustgraaf v. Behrens*, 619 F.3d 867, 873 (9th Cir. 2010) (quoting 15 U.S.C. § 78t(a)).

> [Section 20(a)] has been interpreted as requiring only some indirect means of discipline or influence short of actual direction to hold a 'controlling person' liable.'" *Farley v. Henson,* 11 F.3d 827, 836 (8th Cir. 1993) (quoting *Myzel v. Fields,* 386 F.2d 718, 738 (8th Cir. 1967)). To meet this standard, a plaintiff must prove: (1) that a "primary violator" violated the federal securities laws; (2) that "the alleged control person actually exercised control over the general operations of the primary violator"; and (3) that "the alleged control person possessed—but did not necessarily exercise—the power to determine the specific acts or omissions upon which the underlying violation is predicated." *Farley,* 11 F.3d at 835. Culpable participation by the alleged control person in the primary violation is not part of a plaintiff's prima facie case. *Metge v. Baehler,* 762 F.2d 621, 631 (8th Cir. 1985). If a plaintiff satisfies the prima facie burden, the burden shifts to the defendant to show that it "acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a); *see also Metge,* 762 F.2d at 630.

*Lustgraaf*, 619 F.3d at 873-74. The Eighth Circuit Court of Appeals has recognized that "[t]he plain language of the control-person statute dictates that, absent a primary violation, a claim for control-person liability must fail." *Id.* at 874 (citing 15 U.S.C. § 78t(a) and *In re Hutchinson Tech., Inc. Sec. Litig.*, 536 F.3d 952, 961-62 (8th Cir. 2008)).

### B. *Standards Applicable To The Motion To Dismiss*

The defendants' Motion To Dismiss these claims is pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure and provisions of the Private Securities

Litigation Reform Act (PSLRA), 15 U.S.C. §§ 78a, 78j, and 78u. I turn next to the standards imposed by these rules and statutes.

### 1. *Rule 12(b)(6) standards*

Rule 12(b)(6) provides for a motion to dismiss on the basis of "failure to state a claim upon which relief can be granted."[2] In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court revisited the standards for determining whether factual allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright &

---

[2] Effective December 1, 2007, Federal Rule of Civil Procedure 12 was "amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules." FED. R. CIV. P. 12, advisory committee's note. The advisory committee notes make it clear that the "changes are to be stylistic only." *Id.* The stylistic changes to Rule 12(b)(6) are in fact minimal, as Rule 12(b)(6) continues to authorize a motion to dismiss "for failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Thus, the amendment did not change the standards for a Rule 12(b)(6) motion.

> A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact), see, *e.g.*, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508, n. 1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic*, 550 U.S. at 555-56 (footnote omitted); *see Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (instructing that "short and plain statement" requirement "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation."). Thus, the Eighth Circuit Court of Appeals has recognized that, under *Bell Atlantic*, "To survive a motion to dismiss, a complaint must contain factual allegations sufficient 'to raise a right to relief above the speculative level. . . .'" *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Bell Atlantic*, 550 U.S. at 555). To put it another way, "the complaint must allege 'only enough facts to state a claim to relief that is plausible on its face.'" *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 387 (8th Cir. 2009) (quoting *Bell Atlantic*, 550 U.S. at 570); *accord Iqbal*, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting *Bell Atlantic*, 550 U.S. at 557).

The court must still "accept as true the plaintiff's well pleaded allegations." *Parkhurst*, 569 F.3d at 865 (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)); *B&B Hardware, Inc.*, 569 F.3d at 387 ("[W]e 'assume[ ] as true all factual allegations of the complaint'" (quoting *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007)). The court must also still "construe the complaint liberally in the light most favorable to the plaintiff." *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (post-*Bell Atlantic* decision). On the other hand, "[w]here the allegations show on the face of the complaint that there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is [still] appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997), for this standard in a discussion of Rule 12(b)(6) standards in light of *Bell Atlantic*).

Thus, what is ordinarily required is pleading of allegations sufficient to raise a plausible inference as to each element of a claim or cause of action. *See Iqbal*, ___ U.S. at ___, 129 S. Ct. at 1949-50; *accord Hamilton*, 621 F.3d at 818-19; *Parkhurst*, 569 F.3d at 865 ("To survive a motion to dismiss, a complaint must contain factual allegations sufficient 'to raise a right to relief above the speculative level. . . .'" (quoting *Bell Atlantic*, 550 U.S. at 555)); *B&B Hardware, Inc.*, 569 F.3d at 387 ("[T]he complaint must allege 'only enough facts to state a claim to relief that is plausible on its face.'" (quoting *Bell Atlantic*, 550 U.S. at 570)). Moreover, allegations that raise plausible inferences of alternative scenarios, one that satisfies a particular element and one that does not satisfy that element, are sufficient to state a claim, because "[w]hich inference will prove to be correct is not an issue to be determined by a motion to dismiss." *Id.* at 819 (noting that the plaintiffs' complaint raised plausible inferences of both employee and independent contractor status, in support of the "employee status" element of his claim that the

13

purported employer negligently breached its duty to maintain a safe workplace for its employees).

### 2. *Rule 8(a) and 9(b) standards*

Although Rule 8(a) of the Federal Rules of Civil Procedure ordinarily requires only a "short and plain statement" of the grounds for jurisdiction and the pleader's claim showing that the pleader is entitled to relief, the defendants contend, and the plaintiffs do not dispute, that the heightened pleading standards of Rule 9(b) and the PSLRA are applicable here, where the claims involve alleged securities fraud. "Under Rule 9(b)'s heightened pleading standard, 'allegations of fraud, including fraudulent concealment for tolling purposes, [must] be pleaded with particularity.'" *Summerhill v. Terminiz, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011) (quoting *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007). "In other words, Rule 9(b) requires plaintiffs to plead 'the who, what, when, where, and how: the first paragraph of any newspaper story.'" *Id.* (again quoting *Great Plains Trust Co.*, 492 F.3d at 995, with a quotation omitted).

### 3. *PSLRA pleading standards*

As the Eighth Circuit Court of Appeals has explained, however, "The PSLRA goes beyond the ordinary pleading requirements described in Rules 8(a)(2) and 9(b) of the Federal Rules of Civil Procedure." *In re 2007 Novastar Financial, Inc., Securities Litig.*, 579 F.3d 878, 882 (8th Cir. 2009). Specifically,

> The PSLRA imposes a heightened pleading standard in cases alleging securities fraud. Claims governed by the PSLRA must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading" (the "falsity requirement"), 15 U.S.C. § 78u-4(b)(1), and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" (the "scienter requirement"), *id.* § 78u-4(b)(2);

14

> *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007).

*Lustgraaf*, 619 F.3d at 872. Where, as here, the "primary violation" is a § 10(b)/Rule 10b-5 securities fraud claim, the pleader's § 20(a) "control person" claim, as well as the § 10(b)/Rule 10b-5 claim, must satisfy the PSLRA's heightened pleading requirements. *Id.* at 874.

### C. Application Of The Standards

Although the question may be much closer than the relative brevity of this opinion would suggest, I find that the plaintiffs have adequately pleaded both their § 10(b)/Rule 10b-5 securities fraud claim and their § 20(a) "control person" claim.

#### 1. Pleadings based on confidential informants

As a preliminary matter, I note that the defendants challenge the plaintiffs' claims based on insufficient pleading of the basis for the alleged confidential witnesses' knowledge. At a minimum, the PLSRA requires pleading of the sources' basis of knowledge. *See Horizon Asset Mgmt., Inc. v. H & R Block, Inc.*, 580 F.3d 755, 764 (8th Cir. 2009). I believe that the Amended Complaint meets this standard. More importantly, the actions of the OTS corroborate and support the reliability of the confidential witnesses' allegations. *See, e.g., Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 263 (3d Cir. 2009) ("In the case of confidential witness allegations, we apply [the PSLRA's particularity] requirement by evaluating the 'detail provided by the confidential sources, the sources' basis of knowledge, the reliability of the sources, the corroborative nature of other facts alleged, including from other sources, the coherence and plausibility of the allegations, and similar indicia.'" (quoting *California Pub. Employees Retirement Sys. v.*

*Chubb Corp.*, 394 F.3d 126, 147 (3d Cir. 2004)). Thus, the Amended Complaint is not subject to dismissal, because of its reliance on information from confidential informants.

### 2. *The § 10(b)/Rule 10b-5 claim*

#### a. *Misstatements and falsity*

Turning to the § 10(b)/Rule 10b-5 securities fraud claim itself, as the plaintiffs assert, they have pleaded the alleged misstatements and why they were false when made. *See Minneapolis Firefighters' Relief*, 641 F.3d at 1028; *Lustgraaf*, 619 F.3d at 872. For example, ¶¶ 30-34 identify allegedly material false statements regarding iAdvance and MPS in specific SEC filings, and ¶ 35 alleges why each of these statements was false; ¶¶ 36-37 identify allegedly material false statements regarding disclosure of "risk factors," and ¶ 38 alleges why each of these statements was false; ¶ 39 identifies allegedly material false and misleading statements and omissions regarding the OTS, and ¶ 40 alleges why these statements were false; ¶¶ 41-53 identify allegedly material false statements about Meta Financial's financial results, and ¶ 54 alleges numerous specific reasons why these statements were false; ¶¶ 55-57 identify allegedly material false statements about Meta Financial's controls and procedures, and ¶ 58 alleges why these statements were false; and, finally, ¶ 59 identifies allegedly material false and misleading statements in Sarbanees-Oxley certifications, and ¶ 60 alleges why these statements were false. I find that the plaintiffs have also adequately shown why there was at least arguably a duty to disclose the omitted information and why the statements were false when made.

#### b. *"Puffery" and "group pleading"*

Furthermore, at least in light of the pleadings, I cannot hold that, as a matter of law, the statements on which the plaintiffs' § 10(b)/Rule 10b-5 claim is founded involve just "'[s]oft, puffing statements generally lack[ing] materiality'" because they are such "vague statements'" that are "'not specific enough to perpetrate a fraud on the market.'" *See*

16

*Detroit Gen. Retirement Sys.*, 621 F.3d at 807 (quoting *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 547 (8th Cir. 1997)); *see also In re AMDOCS, Ltd. Sec. Litig.*, 390 F.3d 542, 548 (8th Cir. 2004) (also citing *Parnes*, 122 F.3d at 546-48, for the standards for immaterial misrepresentations, including those "so vague and of such obvious hyperbole that no reasonable investor would rely upon them"). Moreover, the "group pleading doctrine" does adequately tie the alleged misrepresentations and non-disclosures to the various defendants. *See City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 689 (6th Cir. 2005) ("That exception is premised on the assumption that '[i]n cases of corporate fraud where the false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other group-published information, it is reasonable to presume that these are the collective actions of the officers'" (quoting *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1440 (9th Cir. 1987)); *and compare In re Hutchinson Tech., Inc., Sec. Litig.*, 536 F.3d 952, 961 n.6 (8th Cir. 2008) (declining to consider whether the "group pleading doctrine" survived the PSLRA), *with In re McLeodUSA, Inc.*, 2004 WL 1070570, *4 (N.D. Iowa 2004) (noting that "a majority of the federal courts addressing the issue have determined that the group pleading doctrine has in fact survived the passage of the [PSLRA]").

        *c.*     *Scienter*

The plaintiffs have also adequately alleged scienter. *See Minneapolis Firefighters' Relief Ass'n*, 641 F.3d at 1028; *Lustgraaf*, 619 F.3d at 872. Specifically, I find that the combination of the allegations of the individual defendants' positions with Meta Financial, their alleged access to information and the disclosures in question, and the nature of the alleged misrepresentations and omissions give rise, at the very least, to a "strong inference," *Lustgraaf*, 619 F.3d at 872, that the individual defendants were "severe[ly] reckless[]" in allowing the disclosures to be released or to stand and that all of the

17

defendants had the motive and opportunity to make the allegedly fraudulent disclosures or not to recall them after they were made. *Detroit Gen. Retirement Sys.*, 621 F.3d at 808. Here, a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged. *Minneapolis Firefighters' Relief Ass'n*, 641 F.3d at 1029.

### d. *Connection, reliance, economic loss, and causation*

Finally, as to the remaining elements of the plaintiffs' § 10(b)/Rule 10b-5 securities fraud claim, *see Minneapolis Firefighters' Relief Ass'n*, 641 F.3d at 1028, I find that the plaintiffs have adequately pleaded a connection between the alleged misrepresentations or omissions and the purchase or sale of a security, *see, e.g.,* Amended Complaint ¶ 29 (alleging that the defendants' actions deceived the investing public regarding Meta Financial's business, operations, management, and stock value, enabled artificial inflation of the price of Meta Financial shares, enabled the sale by the defendants of shares of the company, despite possession of adverse information, and caused others to purchase stock at artificially inflated prices); reliance upon the misrepresentation or omission, *see id.* at ¶¶ 79-80 (pleading the applicability of a presumption of reliance under the fraud-on-the-market doctrine); *see also In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 321 (8th Cir. 1997) (explaining the requirements for adequately pleading fraud-on-the-market as a basis for a presumption of reliance); and both economic loss and loss causation, *see id.* at ¶¶ 70-75.

### e. *Summary*

Because I find that the plaintiffs' § 10(b)/Rule 10b-5 securities fraud claim has been pleaded with the required particularity, I will deny the defendants' motion to dismiss that claim.

### 3. The § 20(a) "control person" claim

The defendants challenge the plaintiffs' § 20(a) claim on two grounds. First, the defendants contend that the plaintiffs failed to plead a primary violation of § 10(b). Second, the defendants contend that the plaintiffs offer nothing more than conclusory, boilerplate allegations that the individual defendants are presumed to have had the power to control or influence Meta Financial because of their direct and supervisory involvement in the day-to-day operations of Meta Financial. I disagree with both contentions.

First, I found, above, that the plaintiffs have adequately pleaded their § 10(b)/Rule 10b-5 securities fraud claim as the "primary violation." *See Lustgraaf*, 619 F.3d at 873-74 (noting that the first element of a § 20(a) claim is that a "primary violator" violated the federal securities laws). Therefore, that part of the defendants' challenge to the plaintiffs' § 20(a) claim based on insufficiency of the § 10(b) claim fails. *Compare Minneapolis Firefighters' Relief Ass'n.*, 641 F.3d at 1030 (affirming dismissal of a § 20(a) claim, because the plaintiff's § 10(b)/Rule 10b-5 securities fraud claim had been properly dismissed).

Second, I disagree with the defendants' characterization of the allegations of the individual defendants' power or control over Meta Financial as merely conclusory or boilerplate. In addition to the allegations in ¶¶ 101-102 of the Amended Complaint, which allege, generally, that the individual defendants exercised control over Meta Financial, the Amended Complaint includes the allegations in ¶¶ 24-28, which identify with particularity not only the positions of each individual defendant in Meta Financial, but specific SEC disclosures signed and certified by them. Thus, the Amended Complaint presents more that sufficient inferences of direct or indirect control of Meta Financial by the defendants that could serve as the basis for § 20(a) liability. *Lustgraaf*, 619 F.3d at 873 (noting that

§ 20(a) has been interpreted as requiring only some indirect means of discipline or influence short of actual direction to hold a "controlling person" liable).

Thus, the plaintiffs' § 20(a) claim is also adequately pleaded.

### III. CONCLUSION

The plaintiffs' Amended Complaint does adequately plead both a § 10(b)/Rule 10b-5 securities fraud claim and a § 20(a) "control person" claim. Therefore, the defendants' April 11, 2011, Motion To Dismiss The Amended Complaint (docket no. 32) is **denied in its entirety**.

**IT IS SO ORDERED.**

**DATED** this 18th day of July, 2011.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA